## Lehigh Valley Railroad Company v. Lehigh County

*Butz, Hudders, Tallman & Rupp*, for plaintiff.
*Donald L. LaBarre*, for defendant.

HENNINGER, P. J., December 20, 1954.—Plaintiff is suing defendant for $1,784.28 spent by it for the relocation of its tracks and for flagmen to protect its train movements in the course of the construction of a county bridge commonly known as Pine Street Bridge, over the Lehigh River and connecting Whitehall Township and the Borough of Catasauqua in Lehigh County, and crossing above grade, inter alia, the tracks of plaintiff's railroad.

Erection of the bridge was authorized by the Public Utility Commission of Pennsylvania, which provided in its order of June 4, 1951:

"That Lehigh Valley Railroad Company, at its sole cost and expense, furnish all material and do all work necessary to make any alterations of its tracks, signals, wire lines or other facilities required by reason of the construction of the crossing improvements, and in addition, at its sole cost and expense, maintain watchmen or flagmen to protect its train movements during the time that such alterations are being made to the facilities of the Railroad Company, during the time the portion of the existing bridge extending over its tracks is being removed, and during the time the portion of the new bridge extending over its tracks is being constructed in accordance with this order."

Plaintiff claims the right to a refund by reason of an agreement entered into between it and defendant county on January 6, 1905, upon the occasion of the erection of the former structure which served the same purpose until its deterioration and the increase

in volume and weight of modern traffic demanded its removal. The pertinent portion of that agreement after providing for a contribution by Lehigh Valley Railroad of not more than $5,000 to the cost of the bridge, reads as follows:

"This contract is entered into on the part of the Railroad Company with the further condition that when the said bridge is completed and the proportionate share of the costs thereof paid by the Railroad Company as above provided for, that the said Railroad Company shall in no event be called upon or be liable for the renewal of the bridge in the future nor for any cost or expense in the maintenance of the same, nor for any damages that may in any manner result from the use or maintenance of said bridge or otherwise over the right of way of said Railroad Company. . . ."

Defendant has filed preliminary objections by way of demurrer: (1) The subject matter of the suit is specifically within the jurisdiction of the Public Utility Commission and not of this court; (2) no appeal having been taken from the order of the Public Utility Commission, the matter is res adjudicata, and (3) the items claimed are not covered by the agreement.

Objections 1 and 2 raise two very interesting points which may have to be decided upon another phase of this case and probably in another court. See Commonwealth ex rel. Schnader, Attorney General, v. Ritter et al., 313 Pa. 526, 530; P. U. C. Law of May 28, 1937, P. L. 1053, sec. 903, 66 PS §1343. Since we are of the opinion that the third objection controls this case, we postpone consideration of the first two until they may control a decision.

We are not willing to use this case as a trial balloon on the question of the railroad's liability to the county for any contribution to the cost of the bridge itself.

We take it that if plaintiff is to recover it must be on the specific words "that the said Railroad Company shall in no event be called upon or be liable for the renewal of the bridge in the future." The expense involved has nothing to do with "any cost or expense in the maintenance of the same" for the bridge was completely destroyed before plaintiff's work was begun. Nor for the same reason was it for "any damages that may in any manner result from the use or maintenance of said bridge or otherwise over the right-of-way of said Railroad Company."

The words "or otherwise" in relation to "damages" are obviously misplaced and should be at the end of the sentence. The expense incurred by plaintiff will not fit into any possible meaning of the word "damages", since the expense relates solely to operation of the railroad and is prospective and precautionary and not consequential. Becoming subject to the powers of the Public Utility Commission certainly was not a "damage otherwise" in the contemplation of the parties to the contract.

Assuming for the purpose of this opinion only, that relocating and replacing the Pine Street Bridge is a renewal of it (see Pennsylvania Railroad Co. v. Pennsylvania-Ohio Electric Co., 296 Pa. 40, 45), we cannot see how the expense involved by plaintiff in relaying its tracks could properly be called a renewal of the bridge.

In our opinion, the contract between the county and the railroad ought to be construed as strictly as possible to give full effect to the orders of the Public Utility Commission. When the contract was made, the only motive to induce contribution by the railroad was its own advantage in unhampered operations and in monetary savings.

The contract was, nevertheless, subject to the police power of the State. That police power was exercised by

enactment of the Public Service Company Law of July 26, 1913, P. L. 1374, 66 PS §§1 to 1009, inclusive, which provided (article V., sec. 12, 66 PS §§571-577) for compulsory elimination of grade crossings upon order of the Public Service Commission. That power was continued in the Public Utility Commission by sections 409-411 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §§1179-81.

Reading the contract strictly, we do not consider the relaying of tracks and the maintenance of a watchman to be the renewal of a bridge. Apparently, the commission did not think so, either, for it did not include these items among the costs of the project. In fact, a reading of the contentions of the parties before the commission as stated in the order of June 4, 1951, indicates that plaintiff itself did not raise this question before the commission, but that its sole objection was to being assessed for a part of the cost of the bridge itself.

It is to be noted that the contract does not require the county to continue indefinitely or permanently to provide means of passage across plaintiff's right-of-way above grade. In fact, at the time a few timid voices urged abandonment of the Pine Street crossing. Had those voices prevailed, there is nothing in the contract that would have compelled the county to rebuild the bridge at all. This lack of an obligation to rebuild may or may not have a bearing on the meaning of the word "renew" but it certainly places the relocation of plaintiff's track and the guarding of its train movements outside the contract and within the province of the commission as a safety measure.

We must consider the relocation of the bridge, not in relation to the contract at all, but as an independent and original exercise of the powers of the Public Utility Commission in solution of the problem of moving vehicular traffic across the tracks of plaintiff

railroad. That it also involved the crossing of a river, which was the county's primary responsibility is evidenced by the imposition of 95 percent of the cost of construction upon the county.

The argument of the railroads that there is no advantage to them in the elimination of grade crossings because the grade crossing had already been eliminated rests on two fallacies: (1) That the county was already bound by contract to "renew" the outworn, outmoded bridge, and (2) that it was legally impossible for the county to have solved its problem of carrying traffic across the river by means of a bridge at track level. We have already discussed the first point. Granting that permission for a grade crossing as a substitute for a crossing above grade is almost inconceivable in modern times, it was certainly a legal possibility.

The authority of the commission is not limited to the elimination of grade crossings. It extends as well to the construction, alteration, relocation or abolition of *any* crossing of any utility by another utility or by a highway. In any event, we are not now concerned with the authority of the commission, for plaintiff has voluntarily complied with its order and has not appealed therefrom.

The duty of a utility to relocate its own facilities at its own expense, when incidental to the relocation of a crossing, was statutory under article V, sec. 12, of the Public Service Company Law of July 26, 1913, P. L. 1374, supra (66 PS §574), since repealed. The PUC and utilities are no longer bound by that statutory provision but the commission has ample power to continue the same as its own policy and it has done so almost invariably. See section 409(*b*) and (*c*) of the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1179, and section 411(*a*) of the same act, 66 PS §1181.

Taking all the facts pleaded—including the order of the commission, included by reference—as verity, plaintiff has not pleaded a case which would entitle it to recover from defendant and the demurrer must be sustained. There is no indication that a better pleading of the facts would show that a cause of action may exist and therefore we are entering a definitive judgment.

Now, December 20, 1954, defendant's preliminary objection by way of demurrer is sustained and judgment is entered in favor of defendant and against plaintiffs.