Wiegand *v.* Wiegand, Appellant.

Argued March 27, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Charles F. C. Arensberg,* with him *Artemas C. Leslie,* of *McCloskey, Best and Leslie,* for appellant.

*O. K. Eaton,* with him *Jason Richardson,* for appellee.

OPINION BY MR. JUSTICE HUGHES, May 22, 1944:

The defendant and plaintiff were husband and wife. On October 27, 1937, they agreed to separate and entered into a contract in which the defendant made a property settlement with the plaintiff and agreed to pay her certain monthly sums for the support and maintenance of their children. The parties have been unable to agree that certain expenses and charges incurred for the children are contemplated by the contract, and plaintiff brings this action in assumpsit under the provision of the contract authorizing her to bring suit "to procure reimbursement of said sums so expended." Those portions of the contract which must be construed read as follows: "FOURTH: Since it is the understanding and agreement that Second Party is to maintain a home large enough to accommodate the four children of the said parties where they can reside if they so determine, First Party agrees to pay to Second Party on or before the Tenth Day of each Month beginning, November, 1937, the sum of $125.00 per month for each of the minor children for their support and maintenance, during the minority of each of the said minor children. Second Party agrees that the said monthly payments for the minor children by First Party shall be used exclusively for the maintenance and support of the said minor children and, further, agrees that no part of the said monthly payments shall be diverted to any other use or purpose whatsoever. These monthly payments shall be the maximum amount required to be paid by First Party, for the purpose set forth in this paragraph. . . . In the event any of the said children resides with First Party for a period of thirty days or more, and does not reside with Second Party within the same period, then a deduction of $75.00 per month for each such child not residing with Second Party shall be made, but such deductions are not to exceed the sum of $150.00 per month. FIFTH: In addition to the monthly payments to be made for the maintenance and support of the minor children, First Party shall, during the minority of each

child, pay for reasonable, proper and necessary medical, surgical, dental or hospital services, for school tuitions and expenses, for summer vacations or camp expenses, and for a four-year college course for any and all of the said children, even though the same may be not completed during the minority of each child; . . . SIXTH: First Party agrees to allow Second Party to occupy the family home located at 326 South Homewood Avenue, Pittsburgh, Allegheny County, Pennsylvania, Second Party agreeing to enter into a written lease of standard form from the date of this agreement until April 30, 1939, with the First Party, covering the premises, for the nominal consideration of $1.00 per year, said lease to contain a provision that said occupancy shall be for the use of said Second Party and the minor children. . . . Upon the termination of said lease or any renewal thereof or in the event Second Party is required to vacate the premises, the First Party agrees to pay in addition to the foregoing payments four-fifths of the rental of another home, such payments by him not to exceed the sum of $140.00 per month as a home for the Second Party and their children, but not for the continued use or occupancy of any other persons, until each of the said children shall have attained his or her majority."

There were four minor children when the contract was signed—Edwin, Myron, Mary Rita, and Joseph. Edwin became of age and has left the home of his mother. Myron became of age January 18, 1941, but continued to reside with his mother while a student at the University. The father refused to pay for his support after his majority, and for this item the trial judge allowed the plaintiff support and maintenance from the time Myron came of age until September, 1942, the period specified in this action, in the amount of $2,548.39. Mary Rita, by agreement of the parties, entered school near Philadelphia. Her mother paid for athletic clothing, railroad and Pullman transportation, and social activities at the school, the sum of $121.70. The defendant has paid to the plaintiff, toward the support and main-

tenance of Mary Rita, $62.50 per month during the months Mary Rita was at college between September, 1940, and September, 1942. The trial judge found the defendant should have paid at the rate of $125.00 a month throughout this period and awarded the plaintiff $1,062.50. The plaintiff had paid for medical attention of the children during minority and the court allowed $110.00 for this item. After the expiration of the lease on the house, plaintiff moved to an apartment, there paying $135.00 a month from May 1, 1941, to September, 1942, inclusive. The defendant was found to be responsible for four-fifths of the rental, or $1,836.00. The findings of the trial judge resulted in a verdict for the plaintiff in the amount of $5,678.59.

The clauses of this contract we are called upon to construe were drawn for the benefit of the minor children of the parties to the contract. We should adopt that interpretation which, under all the circumstances of the case, ascribes the most reasonable, probable, and natural conduct to the parties: 12 Am. Jurisprudence, p. 754, §231. Where doubt exists as to the interpretation of the contract, it being prepared by one party thereto, upon the faith of which the other has incurred an obligation, we shall adopt that interpretation which shall be favorable to the latter. It must be construed with some degree of strictness against the party preparing it: *Heffner v. First National Bank of Huntingdon,* 311 Pa. 29, 33, 166 A. 370 : in other words, a contract is to be taken most strongly against the party on whom the obligation rests: R. C. L. p. 854; *Pennsylvania Railroad Co. v. Pennsylvania-Ohio Electric Co.,* 296 Pa. 40, 48, 145 A. 686. "Every agreement is to be interpreted and construed with reference to the circumstances under which the parties contract: COULTER, J., in *Callen v. Kilty,* 14 Pa. 286, 288. The words of a grant are to receive a reasonable construction, and one that will accord with the intention of the parties; and, in order to ascertain their intention, the court must look at the circumstances under which the grant was made: *Connery v.*

*Brooke,* 73 Pa. 80, 83. A contract should be construed in the light of the surrounding circumstances and the objects manifestly to be accomplished: *Richardson v. Clements,* 89 Pa. 503, 505; *McKeesport Machine Co. v. Insurance Co.,* 173 Pa. 53, 57": *McMillin v. Titus,* 222 Pa. 500, 503, 72 A. 240. With these rules of construction before us, we shall apply them to the questioned clauses of this contract. In the fourth clause the defendant contemplates the plaintiff "is to maintain a home large enough to accommodate the four children." Such an establishment cannot be dismantled in part or diminished in size while each child is away at school. This the defendant recognizes, for he provides it shall continue "during the minority of each of the said minor children." He further provided for their schooling in the fifth clause, but said nothing therein about any deductions for the maintenance of the home during this period. It is clear he intended a home to exist as any family would maintain it for the benefit of their children, except he, the father, would not be present therein. He only provides for a deduction when his expenses are increased by their addition to his own household; had he felt it should have been otherwise, he could have as readily expressed it in the contract. The court properly construed these clauses of the contract and allowed the plaintiff payment for full maintenance while Mary Rita was in school. If the defendant had desired to make this contract for his wife to provide board and lodging for Mary Rita, instead of maintaining a home large enough to accommodate four children until they are of age, he could have so written his agreement.

Myron, while attending the University, resided with his mother, and after he attained his majority the defendant ceased support and maintenance payments to the plaintiff, claiming his obligation under the contract was to pay only the tuition and other fees of the university where Myron was enrolled, as this was all that was covered by "college course." Webster's New International Dictionary defines college course: "A unit of

instruction consisting of recitations, lectures, laboratory experiments, or the like, in a particular subject; also, the subject matter of such a unit of instruction." When placed in this contract, this language is used for an entirely different purpose. The defendant intends to cover the maintenance of his son for four years in college and the expenses incident thereto. For a man in humble circumstances, it might have meant only books and tuition; but this defendant is a man of large means and would intend to maintain his son as other men of like standing maintain their sons in college, which would cover the cost of board and room, books, and the like, as well as tuition, matriculation and laboratory fees. The fact that Myron secured his board and lodging at his mother's home and used the other conveniences there provided, does not alter the defendant's obligation to provide for these. The plaintiff was entitled to recover for this item of expense and the court found it amounted to $2,548.39.

We have already indicated the mother was obligated "to maintain a home large enough to accommodate the four children" . . . during the minority of each of the said minor children. It was first arranged at 326 South Homewood Avenue, Pittsburgh, and the defendant now complains that she did not continue on there. The contract anticipated he might sell that residence and it provided for her removal on sixty days' notice or at the termination of the lease. He fixed the amount another suitable home should rent for, to wit, $140.00 per month, of which he was to pay four-fifths. At the termination of the lease she got an apartment, to which he does not object, for $135.00 a month, and we see no reason why he should not pay four-fifths of the rental "during the minority of each of the said minor children." His portion of the rental to September, 1942, is $1,836.00. The verdict of $5,678.59 against the defendant was proper under a correct interpretation of the contract on the evidence produced.

Judgment affirmed.