## Commonwealth ex rel. Howell v. Howell

*Cecil B. Moore*, for Commonwealth.

*Robert N. C. Nix, Jr.*, for defendant.

STOUT, J., December 4, 1961.—The question for answer is whether, in the circumstances of this case, it was an abuse of discretion to order a father to pay college tuition for an 18-year-old daughter from the proceeds of an insurance policy he maintained for that purpose. The question of her day-to-day support is not involved in this appeal.[1]

The father, a graduate of Temple University School of Pharmacy, is registered and practicing as a pharmacist in a business he has owned and operated over 20 years. The mother is a college graduate who

---

[1] This case began September 24, 1958, when a petition for the support of herself and minor child was filed by Mrs. Howell. It was continued three times, but on January 29, 1960, Judge Hazel H. Brown entered a temporary order of $40 a week for wife and child by agreement of counsel with the notation, "Re-list at request of counsel." On March 29, 1961, an attachment hearing was held before Stout, J. At that time, counsel for appellant requested a relisting of the case for hearing on a permanent order. Hearings were held on June 23, 1961, July 18th, 19th, 21st, 25th, and on August 1st. The court was on vacation the remainder of the month of August. The hearing out of which this appeal grew was held September 21st. At that time, the following order was entered: *"Pay tuition for daughter at Temple University today out of Educational policy."* A petition to vacate the temporary order as to the child was filed October 6, 1961. No testimony has been taken on that petition. Neither has testimony looking toward a permanent order for the wife been completed.

majored in secretarial education at Hampton Institute in Virginia. They were married June 10, 1938. The daughter, their only child, was born September 10, 1943. She graduated from Girls High School in June 1961, in the fourth quintile of a class of 221 students. On June 19, 1961, she was admitted to Temple Community College for the secretarial course which began around September 21, 1961.

Approximately 10 years ago, the father, in the presence of the mother, entered into a contract of insurance with the North Carolina Mutual Insurance Company for the purpose of establishing a fund to defray expenses of the daughter's college education. The policy was maintained throughout the years for that purpose and has a present value of upwards of $1,000.[2] The tuition at Temple Community College for the course the daughter wishes to pursue is either $440 or $540 per term. Even though the policy was available, and the father stated in open court on August 1st, that he was not only interested in his daughter's securing higher education but that, on the question of tuition, there was nothing to worry about as the tuition would be paid, when it became payable in September, he refused to honor his representation. He gave as his reasons that the daughter had reached her eighteenth birthday a few days before on September 10, 1961, and had completed high school, that there was nothing to indicate she was either physically or mentally unable to support herself, and that he owed no duty to support her while she attended college.

The fact that a child has reached the eighteenth birthday does not relieve the father of the duty to sup-

---

[2] At the hearing of September 21st, the father testified the value was $1,000. In an off-the-record discussion before the court on August 1, 1961, he stated the value to be $1,500. In an earlier hearing, the mother testified the value was $1,800 to $2,000.

port. At common law, that duty continued until the child reached the age of 21, and thereafter in case of disability: Mt. Pleasant Overseers v. Wilcox, 2 Dist. R. 628 (1893). The statutory duty imposed by this Commonwealth is no less. The word "children" in the non-support statute[3] is used to denote persons under 21 years of age (Commonwealth ex rel. O'Malley v. O'Malley, 105 Pa. Superior Ct. 232, 161 Atl. 883 (1932)) as distinguished from the ordinary meaning of the word as male or female descendants in the first degree, of whatever age. It bespeaks minority rather than adulthood, dependence rather than independence, unemancipation rather than emancipation. Whether the duty to support continues *beyond age 21* depends on whether the adult child is physically and mentally able to engage in profitable employment, and whether employment is available to him or her at a supporting wage: Commonwealth ex rel. Groff v. Groff, 173 Pa. Superior Ct. 535, 98 A. 2d 449 (1953). The extent of the duty to support *before age 21* is a different question entirely.

Even though the common law as well as the statutory duty extends to age 21, by practice, and by practice only, in some counties, it has been terminated at an earlier age upon proof that the child was self-supporting.[4] In Commonwealth v. Gilmore, 97 Pa. Superior Ct. 303 (1929), the court said:

"In this county, [Berks] . . . it has been our invari-

---

[3] The Penal Code of June 24, 1939, P. L. 872, 18 PS §4733, as amended September 26, 1951, P. L. 1494, sec. 1; July 3, 1957, P. L. 457, sec. 1, and July 3, 1957, P. L. 450, sec. 1.

[4] There is no evidence that the daughter for whom tuition is sought is self-supporting. The only evidence as to gainful employment is that during the summer of 1958, she earned a total of $150 while working as a mother's helper in Atlantic City and that she continued to work for the same employer upon her return to Philadelphia until November 1958 for $1 an hour.

able practice under this statute to revoke all orders for support of normal children upon their reaching the age of 16 years. But by inquiry among the judges of the courts of many other counties in the state we have learned that their practice is different. In general the usual practice in this Commonwealth seems to be to continue the order during minority or until the child is in fact at work and self-supporting, subject, of course, to a prior revocation where the child though in school, is wasting his time or is incapable of further progress. In other words, the courts do not, in the ordinary case, interfere with the child's wish to get a common-school education but require the father, if able, to provide for the child during such time, having regard, however, to the child's ability and progress."

And see Fusco Estate, 16 D. & C. 2d 129 (1958), where President Judge Reed, in speaking of allowances from an estate, stated that while Beaver County had no established rule, it had been their policy and practice to follow the rule of Allegheny County that, beyond high school grades, no allowance would be made for educational purposes for a person for more than one year.

The appellate and lower courts of this State, and of others, have examined frequently circumstances under which support and/or tuition payments for college students, even those over 21, may be enforced against fathers. Obviously, all fathers in all circumstances are not required to support, and/or pay tuition for all children to go to college. That does not negative the fact that some fathers, in some circumstances, are required to pay support and/or tuition for some children to attend college. Each case must be decided on its own facts.[5] We think, to the extent of the fund

---

[5] Even the early cases, which have said, by way of dictum, or have held that a father was not liable for the support of children

created by the insurance maintained for the purpose of the college education of the daughter, this is such a case.

Most of the cases decided in Pennsylvania have involved the construction of written agreements.[6] In Wiegand v. Wiegand, 349 Pa. 517, 37 A. 2d 492, defendant, by separation agreement, undertook to pay for four-year college courses for his children even though the courses would not be completed during the minority of each child. As against his contention that after his student son reached majority, he was liable for fees and tuition only and not for support and maintenance, the court said:

"The defendant *intends* to cover the maintenance of his son for four years in college and the expenses incident thereto. *For a man of humble circumstances, it might have meant only books and tuition;* but this defendant is a man of large means and would intend to maintain his son as other men of like standing maintain their sons in college, which would cover the cost of board and room, books, and the like, as well as tuition, matriculation and laboratory fees": 349 Pa. at 522, 37 A. 2d at 495. (Italics supplied.)

Commonwealth ex rel. Grossman v. Grossman, 188 Pa. Superior Ct. 236, 146 A. 2d 315 (1958), also in-

---

attending college, have limited carefully their statements and holdings to the facts of the particular case. See dictum in Commonwealth ex rel. Gillen v. Gillen, 102 Pa. Superior Ct. 136 at 138 (1931), and holding of Commonwealth ex rel. Binney v. Binney, 146 Pa. Superior Ct. 374 at 380, 22 A. 2d at 601 (1941).

[6] Even though most cases have involved the construction of agreements, the right to support is not a contract right. Education is an element of the right to support. 1 Blackstone's Commentaries 450 (Wendell's ed. 1854), teaches that "The last duty of parents to their children is that of giving them an education suitable to their station in life: a duty pointed out by reason, and of far the greatest importance of any . . ."

volved the construction of a separation agreement by which the husband, a dentist, agreed, when his son was 12½ years old, to pay for his support until he "completed his schooling." In construing this agreement, the lower court found that it was "within the contemplation of the parties that the father should pay for his son's support while he was attending college or until such reasonable time as his schooling would be completed or terminated." In affirming the order, the Superior Court said:

". . . if we are to ascribe reasonable, probable and natural conduct to a professional man, we must conclude that it was the father's intention when he signed the agreement to help his son through college": 188 Pa. Superior Ct. at 241.

Commonwealth ex rel. Stomel v. Stomel, 180 Pa. Superior Ct. 573, 119 A. 2d 597 (1956), however, involved not a written agreement but an undertaking in open court by the father to support a child in college. The court held it was not an abuse of discretion to include tuition payment as an item of that support. The payments to Temple University approximated $11.50 a week. The court said:

"We see no error in this as the father at the time he made the agreement in open court to support this son knew that he had graduated from high school and that he was enrolled at Temple University. We believe that it was within the contemplation of the parties that the father should pay for this son's tuition at college": 180 Pa. Superior Ct. 573 at 575, 119 A. 2d at 599.

The case of Commonwealth v. Wengert, 173 Pa. Superior Ct. 613, 98 A. 2d 203 (1953), cited by appellant at the bar of the court, is not apposite. The tuition involved there was some $3,600 a year for a school which gave training in no particular field but "in the social cultures generally, including riding, golfing and

similar lessons." The trial court said that, in his view, that type of education was not " 'the type and character that would especially fit her for earning a livelihood, and that after a daughter had completed the high school course you cannot expect her parent to continue to provide for her indefinitely under the guise of going to college.' " With his refusal to enter a support order under those facts, the Superior Court found no abuse of discretion.[7]

---

[7] Numerous lower court decisions in the Commonwealth have considered the question of support and/or tuition payments with varied results.

In Commonwealth v. Blumberg, 24 D. & C. 2d 604 (Montg. Co., 1961), one factor which apparently influenced Judge Honeyman's decision to dismiss the petition for support by an 18-year-old college-bound daughter against her physician father was the presence of sufficient funds for that purpose of which he was custodian. He testified that the funds were then available for her college education and would continue to be available for that purpose. Thus, the question with which we are faced was not reached.

President Judge Gawthrop in Commonwealth v. Byerly (Chester Co., 1960), 21 D. & C. 2d 92, while not considering the question of tuition, refused to vacate an order of support for a 20-year-old son, who was a second-year college student, whose mental and physical conditions were good and who had worked at Lukens Steel Company during the summers of 1958 and 1959.

President Judge Windle in In re George E. Earnshaw, Jr., 6 Chester 274 (1954), even allowed payments for education from the estate of an incompetent father to a daughter who was 23 years old and who had graduated from the University of Pennsylvania with a major in history, but who found work unavailable in that field and wished to go to Drexel Institute to obtain a master's degree in library science which practically guaranteed her employment.

President Judge Reed, of the Beaver County Orphans' Court, is of the opinion that ". . . a college education can and should be, in these times, classified as necessary and a necessity": Fusco Estate, 16 D. & C. 2d 129, 132 (1958).

Cases which have held to the contrary are: Commonwealth v. Rice, 1 Adams 91 (1959); Commonwealth v. Yoh, 71 Montg. 20 (1953), and Commonwealth v. Fleming, 17 Monroe 9 (1947).

In the instant case, tuition is not exorbitant, and the training sought by the daughter is of a type and character which will fit her for earning a livelihood. Temple University is not a finishing school type of institution, and there can be no claim that pursuit of a secretarial course at the university level is ephemeral in character. Since the inception of the contract of insurance over 10 years ago for the purpose of educating the daughter, the parties have contemplated that she would receive higher education, at least to the extent of the policy. Moreover, with full knowledge that his daughter had graduated from high school and had been accepted by Temple University, the father represented in open court that the tuition would be paid from the proceeds of the policy. We think, in these circumstances, it should be paid.

Additional reasons of law and policy exist which indicate the tuition should be paid.

College tuition and/or support, in a proper case, is a necessary.[8] Generally, the duty to support includes the duty to provide such food, clothing, shelter, medical care and education as are "necessaries," and "necessaries," being relative, vary with the station of life

---

[8] The earliest known case which discussed whether college fees were necessaries was Middlebury College v. Chandler, 16 Vt. 683, 42 Am. Dec. 537 (1844). That case did not involve the liability of a father but of a minor himself on an infant's common law liability for necessaries. As was pointed out in Esteb v. Esteb, infra, ". . . conditions have changed greatly in almost [now over] a century that has elapsed since that time. Where the college graduate of that day was the exception, today such a person may almost be said to be the rule." The change of time is dramatically illustrated by the fact that the first woman in America to graduate from college graduated from Oberlin in 1841. Institutions of higher learning conferred 153,448 earned degrees on women, however, during the school year 1958-59: U. S. Dept. of Labor 1960 Handbook on Women Workers, page 102.

of the father: Commonwealth ex rel. Bowie v. Bowie, 89 Pa. Superior Ct. 288. For a professional man, who has married a college graduate, to have his daughter follow her mother's profession at his own alma mater squares perfectly with the station of life he has attained for himself and has created for her. Such education for the daughter seems normal: Cohen v. Cohen, 6 N. J. Superior Ct. 26, 69 A. 2d 752 (1949), has suggested that: ". . . in a family where a college education would seem normal, and where the child shows scholastic aptitude and one or other of the parents is well able financially to pay the expense of such an education, we have no doubt the court could order the payment."

Cases in other sister jurisdictions have found tuition, and/or support, for college a necessary. Calogeras v. Calogeras, 163 N. E. 2d 713 (Ohio Juvenile Ct., 1959), stated that the determination of whether or not a college education is a necessity is not to be resolved merely by the fact that compulsory education laws compel a child to attend school under threat of legal action only until he is a certain age. Moreover, the court said:

"A changing world has shattered the old concept that a higher education is a luxury to be enjoyed only by the rich. Preparing our youth for possible service in the ranks of the creators and developers of civilization has become an imperative necessity": page 713.

In Pass v. Pass, 238 Miss. 449, 118 So. 2d 769 (1960), a support order was increased from $50 to $90 a month for a 19-year-old daughter who wished to enter the University of Mississippi. There the court said:

". . . we hold that where the minor child is worthy of and qualified for a college education and shows an aptitude therefor it is the primary duty of the father,

if in reason financially able to do so, to provide funds for the college education of his minor child. . . .

"A contrary view may have been justified in former times when the needs of the family, and of society, and of government were less exacting than they are today. But we are living today in an age of keen competition, and if the children of today who are to be the citizens of tomorrow are to take their rightful place in a complex order of society and government, and discharge the duties of citizenship as well as meet with success the responsibilities devolving upon them in their relations with their fellow man, the church, the state and nation, it must be recognized that their parents owe them the duty to the extent of their financial capacity to provide for them the training and education which will be of such benefit to them in the discharge of the responsibilities of citizenship. It is a duty which the parent not only owes to his child, but to the state as well, since the stability of our government must depend upon a well-equipped, a well-trained, and well-educated citizenship. *We can see no good reason why this duty should not extend to a college education.* Our statutes do not prohibit it, but they are rather susceptible of an interpretation to allow it. The fact is that the importance of a college education is being more and more recognized in matters of commerce, society, government, and all human relations, and the college graduate is being more and more preferred over those who are not so fortunate. No parent should subject his worthy child to this disadvantage if he has the financial capacity to avoid it": 118 So. 2d 773. (Italics supplied.)

Of like mind was the Supreme Court of Oregon which in Jackman v. Short, 165 Ore. 626, 109 P. 2d 860 (1941), affirmed an order of $50 a month for the sup-

port of an 18-year-old daughter who was attending the State University of Oregon. It said:

"Whether as necessaries within the contemplation of the common law rule, or as a provision for education within the purview of our statute, we believe that awards for a college education made in behalf of a child displaying sufficient capacity are permissible. Reason, as well as the public policy of this state, favorable as it is to higher learning, permits no other conclusion. The high esteem in which college training is held in this state is unmistakably indicated by the numerous colleges found in the various parts of this state": 165 Ore. p. 656, 109 P. 2d p. 872.

In answer to the contention that the daughter should get a job, the court said:

". . . The intimation is made that the purpose of an education is to so train the student that he can make money. If that were the only object of an education there would be more point to the contention that Barbara ought to go to work and earn her own living. But the purposes of education have not become entirely commercialized. One of the principal purposes of an education is still to train the young for the discharge of their duties to society and to afford them such knowledge of our government and American institutions that upon reaching majority they will intelligently perform their part in the great social order": 165 Ore. pp. 638-39, 109 P. 2d p. 865.

As early as 1926, the Supreme Court of Washington found support for a daughter attending college a necessary in Esteb v. Esteb, 138 Wash. 174, 244 Pac. 264. There, the court said:

". . . it will be seen that the question of what sort of an education is necessary, being a relative one, the court should determine this in a proper case from all the facts and circumstances. Nor should the court

be restricted to the station of the minor in society, but should, in determining this fact, take into consideration the progress of society, and the attendant requirements upon the citizens of today": 138 Wash. p. 182, 244 Pac. p. 267.

That same Supreme Court, in Feek v. Feek, 187 Wash. 574, 60 P. 2d 686 (1936), required the father of an 18-year-old son to provide support while he pursued a course in forestry at the State university. The court found that the education the minor sought was a necessary in that it was intended to fit him for a vocation in life. Refer v. Refer, 102 Mont. 121, 56 P. 2d 750 (1936), arrived at the same conclusion regarding a 17-year-old son who wished to take electrical engineering at the State university.

Strom v. Strom, 3 Ill. App. 2d 354, 142 N. E. 2d 172 (1957), extended the duty of a parent to provide not only care and the bare necessities but also a college education where that appeared desirable in order to better equip a child for adult life. Maitzen v. Maitzen, 24 Ill. App. 2d 32, 163 N. E. 2d 840, reached the same conclusion after reviewing not only the public policy of the State as evidenced by the many State institutions of higher learning, but also the public policy of the Federal government, which encourages higher education by providing an incentive by way of income tax deductions to taxpayers whose children attend institutions of higher learning.[9] Not only are we impressed by this policy of the Federal government, but we realize that, in determining the amount of any order, the court should consider the income tax effect upon the parties:

---

[9] See Internal Revenue Code of August 16, 1954, §151 (e) (1) (B), 26 U. S. C. A. §§151 (e) (1) (B), 152 (d) (2), which provides that the $600 earning limit for dependents is not to be applicable if the dependent is the taxpayer's child and is a student.

Hecht v. Hecht, 189 Pa. Superior Ct. 276, 150 A. 2d 139 (1959).

From an analysis of these authorities, it is apparent that each case involving the question of support and/or tuition payments for college students must be decided on its own peculiar circumstances. The common law, as well as the statutory duty to support, continues to age 21. Neither the attainment of the eighteenth birthday nor graduation from high school bars that duty. Even though it has been the practice in some counties to terminate support at various times and on various conditions before age 21, there is no statutory compulsion to do so. Whether the duty to support continues through college, and to what extent, are relative matters which vary from case to case and depend on many factors. Among them are: (1) The educational and professional attainments of the parents, especially of the father; [10] (2) his intent as to the higher education of the child; (3) his financial ability to provide tuition, and/or support, during college years; (4) the utilitarian as distinguished from the purely cultural nature of the course pursued; (5)

---

[10] Aside from the legal proposition, statistics of the Bureau of Census provide an interesting measure of inter-generational educational mobility. According to the findings of the current population survey conducted by the Bureau of Census in October 1960, about 62 percent of the men 20 to 24 years old whose fathers had completed college were currently enrolled in college; by contrast, 28 percent of those whose fathers completed high school but did not attend college and 12 percent of those whose fathers did not graduate from high school were enrolled in college. While sons were twice as likely as daughters to be enrolled in college regardless of of their father's education, a daughter's chances of attending college tended to be relatively more like a son's if her father was a college man. School Enrollment, and Education of Young Adults and Their Fathers: Oct. 1960, Current Pop. Reports, Pop. Characteristics, July 24, 1961, series P-20, no. 110.

the ability of the child to absorb the training, and (6) the public policy of the State and Federal governments. To the extent of this order, appellant is a proper person against whom payment may be enforced.

Appellant is a professional man; his wife is a college graduate. Their daughter chose to follow the career of her mother at her father's alma mater. The father, with the approval of the mother, entered into a contract of insurance over 10 years ago for the purpose of providing funds for her college career. He represented in open court that he would pay the tuition from that policy. His intent that she should have at least as much education as the policy would provide had been abundantly clear since the inception of the policy. A secretarial course is extremely utilitarian in nature, and the daughter had sufficient ability to be admitted to Philadelphia's famed and historic Girls' High School, to graduate therefrom, and to be admitted to Temple Community College. The tuition is not exorbitant. The numerous State-supported institutions of higher learning speak as eloquently of the policy of this Commonwealth in support of higher education as the tax incentives to parents and loans to students speak of the policy of the Federal government. The need for better trained people has become a national cry.

No discretion can be arbitrarily exercised, not even a father's. He is entitled to a "measure of discretion" only, not absolute discretion. To say that, in the circumstances of this case, the father should not pay tuition for his daughter's college education to the extent of this fund created by the insurance contract would be consistent neither with law nor public policy.[11]

---

[11] On the general subject see:

Is a College Education a Legal Necessity? 34 Ohio Bar 295 (1961).

Higher Education—Nicety or Necessity? 1 J. Family L. 146 (1961).

Maintenance and Support—Father's Liability to Provide Child with College Education, 15 U. Miami L. Rev. 108 (1960).

Is a College Education Necessary? 31 Miss. L. J. 285 (1960).

Note 109 Univer. Pa. L. Rev. 130 (1960).

Note 35 Notre Dame L. Rev. 573 (1960).

Note 23 So. Calif. L. Rev. 407 (1950).

Note 20 Ore. L. Rev. 377 (1941).

Note 21 Ill. L. Rev. 409 (1927).

Annotation 133 A. L. R. 887.

Annotation 56 A. L. R. 2d 1207.