## Olive v. Olive

*W. N. J. McGinnis,* for plaintiff.
*Hubert D. Yollin,* for defendant.

FORREST, P. J., March 19, 1962. — Plaintiff filed her complaint in equity to enforce an agreement by her husband to pay a specified sum weekly for the separate support, use and benefit "of his said wife and their ... children".

Defendant filed an answer and counterclaim admitting that he has not paid the full amount of the specified sums to plaintiff. However, he contends that the aggregate of his payments to the wife *and to others* for the support, use and benefit of the wife and children exceeds the agreed amount and hence that he is not in default, but instead, is entitled to credit for all payments which he has made in excess of the aggregate of the weekly payments which he was required to pay according to the provisions of the agreement. Plaintiff replied to the answer and counterclaim.

The question to be resolved is not one of fact, but one of law, viz: whether defendant is entitled to credit for payments to persons other than plaintiff.

### Findings of Fact

1. On, and for some time prior to, September 22, 1950, plaintiff, Catherine Rita Olive, and defendant, William Floyd Olive, were husband and wife.

2. Plaintiff and defendant have two children, namely, Joan Olive, now 21 years of age, a resident student at Manor Junior College, and William Floyd Olive, Jr., now 16 years of age, a resident student at Mother of Savior Seminary, Blackwood, New Jersey.

3. On September 22, 1950, the parties hereto entered into a written agreement which provided, inter alia, for the husband to convey his interest in premises 341

Inwood Road, Ardmore, and all the tangible personalty thereon, to his wife. The agreement further provided:

"1. Husband agrees that he will pay the sum of Fifty Dollars ($50.00) per week for the separate support and maintenance, and for the separate use and benefit of his said wife and their said children aforesaid, until such time as the younger, or the survivor, of said children attains the age of eighteen years, at which time all said payments shall cease. The said payments are to begin as of the first day of October, 1950, and to be made monthly thereafter.

"2. In addition to the said payments of Fifty Dollars ($50.00) per week as aforesaid, husband agrees to pay to wife the sum of Six Thousand Dollars ($6,-000.00), said payment to be made at the time of the execution of this agreement, or on or before October 1, 1950.

"6. Husband agrees, during the term of this agreement . . . to pay all hospital and medical bills which shall in any one calender year be in excess of Two Hundred Dollars ($200.00), the understanding of the parties being that all medical expenses under the sum of Two Hundred Dollars ($200.00) in any one calendar year shall be borne by the said wife. No obligation for the payment of surgical procedures in excess of One Hundred and Fifty Dollars ($150.00) shall be incurred without the express approval of Husband."

This agreement was expressly in full settlement of all claims and rights against the husband and his estate for the wife's support and maintenance and of all rights which she might have against his estate, should she survive him.

4. From September, 1950, until October, 1960, defendant always paid $50 per week to plaintiff.

5. For the year 1960, for the year 1961, and for the month of January, 1962, respectively, defendant paid

plaintiff $475, $1,130, and $75, less than the aggregate amount payable by defendant according to the provision of the agreement.

6. However, defendant made payments to persons other than the plaintiff for room, board, tuition, books and clothes for his children as follows:

| | |
|---|---|
| 1960—for his daughter | $1,371.45 |
| 1960—for his son | 110.00 |
| 1961—for his daughter | 2,403.88 |
| 1961—for his son | 182.95 |
| 1962—for his daughter and son | 470.00 |

## Discussion

The clauses of the separation agreement were drawn for the benefit of defendant's wife and minor children. "We should adopt that interpretation which, under all the circumstances of the case, ascribes the most reasonable, probable, and natural conduct to the parties: 12 Am. Jurisprudence, p. 754, §231 . . . a contract is to be taken most strongly against the party on whom the obligation rests . . . 'Every agreement is to be interpreted and construed with reference to the circumstances under which the parties contract . . .' ": Wiegand v. Wiegand, 349 Pa. 517, 520 (1944). These principles apply to separation agreements: Umholtz v. Umholtz, 11 D. & C. 2d 572 (1957).

The agreement in the instant case provided for the transfer of title of a house and its contents to the wife. In addition, it called for the payment of $6,000 in cash to the wife with which she presumably would be able to pay the taxes, overhead and maintenance charges for the house for quite a few years, if not until the children graduated from high school. By the agreement, the husband also agreed, subject to certain safeguards, to pay what might be considered extraordinary medical, surgical and hospital bills. In addition, he promised to

make weekly payments of $50 for the separate support and maintenance of the wife and children until the younger, or the survivor, attains the age of 18 years.

Compliance with this provision furnishes plaintiff with what has been variously described as "house money", "money for the table", or the like. Unless she receives this sum weekly *in cash*, plaintiff presumably would have to draw upon the fund of $6,000 for her house money, or she would have to obtain gainful employment.

This agreement shows a design and purpose, at least to the extent of $50 per week, to free the wife from the burden of supporting herself and her children, out of her wages or out of her estate or out of the fund of $6,000, until the younger child attains the age of 18 years. The first paragraph of the agreement is silent as to whom the payment of $50 per week should be made. Defendant latches on to this omission as a justification for his assumption of the prerogative of deciding upon the disposition to be made of the agreed upon weekly payments.

If his contention were to be sustained, plaintiff would never know from week to week whether by reason of his whim or otherwise, he would apply part, or all, of the $50 to a particular use of his own selection, or whether he would deliver part, or all, of the $50 to his wife. This would be an unreasonable construction of the contract, defeating the object which the parties manifestly intended to accomplish. We realize that paragraph 2 of the agreement specifically provides for a lump sum payment "to wife", whereas, paragraph 1 provides for weekly payments, but does not provide expressly that they be made to "wife". However, "... in the process of interpretation and construction . . . the court should not frustrate . . . (the) intention (of the

parties) if it is possible to reach a fair and just result, even though this requires . . . the filling of some gaps that the parties have left": Corbin on Contracts, Vol. 1, §95, p. 290.

Defendant faithfully paid $50 weekly to plaintiff, continuously for over ten years until October, 1960, with no deduction for support, maintenance or benefit which he may have paid directly. This is at least consistent with the contention that at the time the parties entered into the agreement defendant construed the same as requiring payment of $50 weekly—with no deductions—to plaintiff. "Where a contract is reasonably capable of two different interpretations, Courts will interpret the agreements just as the parties did": Foulke v. Miller, 381 Pa. 587, 595 (1955). See also MacDougall v. MacDougall, 104 Pitts. L. J. 445 (1952); 42 C. J. S., Husband & Wife, 180, §598.

We need not consider whether in "fairness" to defendant now that the children are spending most of their time at boarding schools, the weekly payment of $50 should be reduced. We declare only that defendant has shown no legal ground for such reduction. If he considers the arrangement unfair, he may decline to assume certain obligations for private schooling, etc., but he is not allowed to set off the payments which he has made, or may make to third persons, against his obligations under this separation agreement.

Neither the industry of counsel, nor our own research, has discovered any reported opinion of any court in Pennsylvania wherein a provision such as paragraph 1 of the agreement in the instant case—not specifically identifying the payee—has been construed. The agreement in Adams v. Adams, 32 Pa. Superior Ct. 353 (1907), is materially different in that it expressly provided for payments to the wife. However, in interpreting the agreement before us, we think

it is implicit that the monthly payments shall be made to the wife, without deduction of other amounts which defendant may have made, or may hereafter pay, for the support, maintenance or benefit of his wife and children.

### Conclusions of Law

1. Equity has jurisdiction over the parties, over the subject matter and over this cause of action.

2. Paragraph no. 1 of the agreement referred to in finding of fact no. 3 should be construed as providing that defendant will make the payments provided therein *to the plaintiff*.

3. Defendant should be ordered to pay to plaintiff, forthwith, the arrearages under the agreement up to and including January, 1962, viz: $1,680, and interest thereon, computed from the dates when the monthly payments comprising said sums became payable, and $50 weekly hereafter, beginning February, 1962, for and during the balance of the term of the agreement.

4. Defendant should pay the costs.

### Decree Nisi

And now, March 19, 1962, it is ordered, adjudged and decreed that defendant, William F. Olive, shall pay to plaintiff, Catherine Rita Olive, forthwith, the arrearages up to and including January, 1962, under their separation agreement, viz: $1,680, and interest thereon, computed from the dates when the monthly payments comprising said sum became payable; defendant also shall pay to plaintiff $50 weekly beginning February, 1962, for and during the balance of the term of the agreement. Costs on defendant.

The prothonotary shall give prompt notice hereof to the parties. Within 20 days after such notice exceptions may be filed. If no exceptions are filed, this decree nisi shall be entered by the prothonotary, upon praecipe, as the final decree.