## Bobali Corporation v. Tamapa Company

*William D. Boswell,* of *Berman & Boswell,* for plaintiff.

*Francis B. Haas, Jr.,* of *McNees, Wallace & Nurick,* with *Schnader, Harrison, Segal & Lewis,* for defendant.

WICKERSHAM, J., March 7, 1974.—This matter is before the court on a case stated and involves the interpretation to be given to an option agreement of sale in order to determine whether Tamapa Company shall pay the sum of $260,252.63 to purchase a particular tract of land, as called for in an option to purchase agreement, or shall Tamapa Company pay the sum of $393,487.50 for the same tract of land under the terms of a first refusal clause in the agreement. We hold they must pay the greater amount, the difference of $133,234.87, between the option price and the first refusal right price.[1]

On January 20, 1971, Gibson Boulevard, Inc. (here "Bobali Corporation") and Tamapa entered into an agreement of sale under the terms of which Tamapa agreed to purchase for $278,000 a tract of land containing 16.8120 acres located in Swatara Township, Dauphin County, Pa. As part of the consideration for Tamapa entering into the agreement of sale, Gibson Boulevard, Inc., agreed to grant Tamapa an option to purchase a tract of land, contiguous to the basic tract purchased, under the terms and provisions of an option agreement attached to, and made a part of, the agreement of sale.

Settlement under the agreement of sale referred to hereinabove was held on April 13, 1971, and at that time Bobali and Tamapa excuted the option agreement of sale referred to hereinabove (hereinafter called the "option agreement") under the terms of which Tamapa was granted an option to purchase for $260,252.63 a tract of land containing 15.7395 acres

---

[1] Argued before the Dauphin County Court en banc on November 15, 1973; William D. Boswell, Esquire, of Berman and Boswell for plaintiff Bobali Corporation and Francis B. Haas, Jr., Esquire, of McNees, Wallace & Nurick for Defendant Tamapa Company with Schnader, Harrison, Segal & Lewis of Philadelphia, Pa.

located in Swatara Township, Dauphin County, Pa. (hereinafter called the "premises").[2]

[2] "OPTION AGREEMENT OF SALE

"AGREEMENT made this 13th day of April, 1971, between BOBALI CORPORATION, a Pennsylvania corporation (hereinafter called 'SELLER') and TAMAPA COMPANY, a Pennsylvania corporation (hereinafter called 'BUYER'),

### "WITNESSETH THAT:

"SELLER owns premises in Swatara Township, Dauphin County, Pennsylvania, as described on Exhibit 1, attached hereto and made a part thereof, and as shown on Tract No. 2 on the Plat attached hereto, made a part hereof and marked Exhibit 2. This Option Agreement of Sale is for the property described on Exhibit 1 and hereinafter called 'premises.'

"This Option Agreement of Sale for the premises is made and delivered by SELLER to BUYER in the form of an option on the part of BUYER to acquire the premises.

"NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that SELLER, for the considerations recited hereinafter and for and in consideration of the sum of One Dollar ($1.00) paid by BUYER to SELLER upon the execution of this Agreement, the receipt of which by SELLER is hereby acknowledged, and intending to be legally bound hereby, agrees to sell and convey the premises to BUYER, and subject to and in accordance with BUYER'S exercise of BUYER'S option rights hereunder, BUYER agrees to take and purchase the premises from SELLER for the price and upon the other terms and conditions hereinafter set forth, and the parties further covenant and agree as follows:

"1. SELLER agrees to hold open the offer contained herein to sell and convey the premises to BUYER for a period of two (2) years and six (6) months from April 13, 1971, unless earlier terminated as hereinafter provided. If BUYER shall fail to accept said offer to buy the premises within the time limited and in the manner prescribed herein, neither party shall thereafter have any rights or obligations under this Agreement.

"BUYER shall accept said offer to purchase the premises or any part thereof by dating and executing the form provided for that purpose at the end of this Agreement on one of the two counterparts of the Agreement which have been executed by SELLER (SELLER having delivered to BUYER two counterparts executed by SELLER) and delivered to BUYER and by delivering one fully

By letter dated March 21, 1973, and in compliance with the option agreement, Bobali notified Tamapa that Certon Corporation, a Pennsylvania corporation, had offered to purchase the premises for $393,487.50 (the third-party offer). By letter dated April 12, 1973, Tamapa notified Bobali that, pursuant to the option agreement, it was exercising the option to purchase the premises or, if for any reason the option had terminated or was not available to Tamapa, Tamapa was, in the alternative, exercising its right of first refusal.

---

executed acceptance counterpart hereof to SELLER within said two (2) years and six (6) months period.

"The parties hereto are entering into an Agreement of Sale of even date herewith for premises described on Exhibit A, attached hereto and made a part hereof, and hereinafter referred to as 'sale premises.' Part of the consideration for the purchase of the sale premises is this Option Agreement.

"2. (a) The purchase price for the premises which SELLER agrees to accept and BUYER agrees to pay is SIXTEEN THOUSAND FIVE HUNDRED THIRTY FIVE DOLLARS ($16,535.00) per acre (or a total of $260,252.63 if BUYER exercises its option for the entire premises) which shall be paid by BUYER to SELLER as follows:

". . .

"14. BUYER shall at all times during the option term of this Agreement have the following right of preemption:

"(a) SELLER shall not sell nor otherwise dispose of the premises or any part thereof without first notifying BUYER in writing of the proposed sale, and setting forth the name of the purchaser, the terms and conditions of the proposed sale, and giving BUYER thirty (30) days' option from the date of receipt of such notice by BUYER within which to notify SELLER of BUYER's desire to purchase the property being offered for sale at the same price and on the same terms and conditions as those on which SELLER proposed to make said sale to said other party.

"(b) if BUYER fails to exercise this right of first refusal and the sale to the third party does not take place or if the sale is to other than a bona fide purchaser, this right of first refusal shall remain in full force; otherwise it shall lapse and this Option Agreement shall terminate."

Such notice by Tamapa was timely (a) to exercise the option if it was available, and (b) to exercise the first refusal right if the option was not available.

By letter dated April 27, 1973, Bobali notified Tamapa that it was accepting Tamapa's exercise of the first refusal right, but was rejecting Tamapa's exercise of the option, contending that the right to exercise the option terminated upon receipt of notice of the third-party offer.

Although Bobali agrees Tamapa is entitled to purchase the premises, there is a dispute between Bobali and Tamapa as to whether the option price or the first refusal right price is the appropriate purchase price. In order to facilitate the resolution of the dispute without unduly delaying the conveyance of the premises, Bobali and Tamapa, by agreement dated June 15, 1973, agreed to commence an amicable action in the Court of Common Pleas of Dauphin County for the purpose of resolving the legal question of whether, under the terms of the option agreement and the facts recited herein, the option price or the first refusal right price is the proper price to be paid by Tamapa. Pursuant to the terms of the said agreement of June 15, 1973, on July 12, 1973, the following occurred: (a) Bobali conveyed to Tamapa by deed the 15.7395 acres, for which conveyance Tamapa paid to Bobali the sum of $260,252.95; (b) Tamapa deposited with National Central Bank (escrowee) the sum of $133,234.87, the difference between the option price and the first refusal right price, and the sum of $1,332.35, the increase in transfer taxes; and (c) Bobali deposited with National Central Bank (escrowee) the sum of $1,332.35, the increase in transfer taxes.

### Intention of the Parties

" ' "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and

to give effect to that intention if it can be done consistently with legal principles." [citing cases] "Contracts must receive a reasonable interpretation, according to the intention of the parties . . . if that intention can be ascertained from their language." ' Brown v. Raub, 357 Pa. 271, 287, 54 A. 2d. 35.

" ' ". . . in order to ascertain that intention, the court may take into consideration *the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement*": Slonaker v. P. G. Publishing Co., 338 Pa. 292, 296, 13 A. 2d. 48, 50, 51.' Hindman v. Farren, 353 Pa. 33, 35, 44 A. 2d. 241": Betterman v. American Stores Co., 367 Pa. 193, (1951). (Emphasis in original.)

As was stated in Unit Vending Corporation v. Lacas, 410 Pa. 614 (1963), at page 617:

"It is.fundamental that where the language of a written document is ambiguous or its meaning doubtful, that in determining the intention of the parties, the writing must be construed most strongly against the party drafting it and the interpretation which makes a rational and probable agreement must be preferred: Wilkes-Barre Township School Dist. v. Corgan, 403 Pa. 383, 170 A. 2d 97 (1961); Heidt v. Aughenbaugh Coal Co., 406 Pa. 188, 176 A. 2d 400 (1962). The intention of the parties is paramount and in construing such a contract, the court will adopt the interpretation, which, under all of the circumstances of the case, ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished; Wiegand v. Wiegand, 349 Pa. 517, 37 A. 2d 492 (1944); Brookbank v.Benedum-Trees Oil Co., 389 Pa. 151, 131 A. 2d 103 (1957)."

We find that the language of the option agreement of sale, under consideration in this case, containing

the right of preemption is unambiguous, clear and reasonable.

Under the option agreement of sale, Tamapa Company had for a period of two and one-half years the right at any time to step in and demand its right to purchase the tract of land in question for the fixed price of $260,252.63. Bobali was committed under the option agreement of sale to keep that fixed purchase price open for two and one-half years and, indeed, for more than two years such was the case. It was not until March 21, 1973, that Bobali notified Tamapa that a bona fide third-party offer to purchase the premises had been received by Bobali in the amount of $393,487.50. Under the express provisions of the option agreement of sale, the fixed purchase price provision was lost to Tamapa; however, Tamapa still had the alternative of exercising its right of first refusal "on the same terms and conditions as those on which Bobali proposed to make said sale to said other party." This compelled Tamapa to now meet the offer of Certon Corporation of $393,487.50. This is precisely what Tamapa bargained for and that is precisely what the option agreement of sale says and means. There is no ambiguity.

We note at the outset as bearing on the intention of the parties that the fixed option price which was to run in favor of the purchaser for a period of two years and six months from April 13, 1971, unless earlier terminated, was at $16,535 per acre which was the same price as the purchaser paid to the seller for the contiguous tract which was the subject matter of the agreement of sale. The only limitation on the fixed price option was a time limitation and it gave a right to the purchaser to purchase all of the premises or any part thereof at the per acre price as the purchaser shall see fit. Such was the fixed price option and is the

option which the purchaser had for the time span as provided in the agreement unless the same was sooner terminated.

Again, looking toward the intent of the parties, we further note the so-called "right of first refusal" or the "right of preemption" which is contained in paragraph 14 of the option agreement of sale. In the first instance, the purchaser was given this right of preemption during the entire so-called option term which would be the two years and six months. Simply, the right of preemption provides the seller could not sell or otherwise dispose of the premises or any part thereof without giving notice to the purchaser in writing of the proposed sale and furnishing details as to the terms and conditions of the proposed sale, including the name of the third party and giving to the purchaser a 30-day option from the date of receipt of such notice from the seller within which the purchaser was obligated to notify the seller of the purchaser's desire to "purchase the property being offered for sale at the same price and on the same terms and conditions as those on which the seller proposed to make the sale to the other party." [Paragraph 14 (a) of the option agreement of sale.]

Paragraph 14(b) of the option agreement of sale provides:

"(b) If BUYER fails to exercise this right of first refusal and the sale to the third party does not take place or if the sale is to other than a bona fide purchaser, this right of first refusal shall remain in full force; otherwise it shall lapse and this Option Agreement shall terminate."

The only reasonable interpretation of paragraph 14(b) is that the right of preemption provided in paragraph 14 would continue as far as the purchaser is concerned in one of two instances. The first instance

would be if the purchaser does not exercise the right of first refusal and then the sale to the third party does not take place, and the second instance is if it is determined that the sale is to other than a bona fide purchaser. *In all other instances, it is provided that the right of first refusal shall lapse and the "option agreement" shall terminate.*

Under paragraph 14 and particularly paragraph 14(b), the purchaser's rights were limited to either accepting the bona fide third-party's offer to purchase the property or the "option agreement of sale" would terminate unless the purchaser would fail to exercise his right of first refusal *and* the sale to the third-party did not take place or it was determined that the third-party was not a bona fide purchaser. Paragraph 14(b) is indicative of the intent of the parties to provide that upon a receipt by the seller of a bona fide third-party offer to purchase the property, the fixed purchase option provided for in paragraph 1 of the option agreement of sale terminated and the purchaser's rights were thereupon only limited to the rights under paragraph 14.

On the question of intent, what value would there be to the seller in having this option agreement of sale and particularly the right of first refusal or right of preemption contained in the agreement in paragraph 14, as paragraph 14 is written, unless it was the definite intent of the parties that the right of preemption would supersede and terminate the fixed price option? Obviously, if the fixed price option was to be an absolute right during the period of time, there would have been no reason to put in paragraph 1 of the option agreement of sale the language "unless earlier terminated as hereinafter provided."[3]

---

[3] We have found no appellate court case in Pennsylvania dealing with this precise factual situation, nor have any been submitted to us. A lower court case dealt with an analogous and

And now, March 7, 1974, based upon the foregoing, judgment is hereby entered in the sum of $133,234.87 in favor of plaintiff, Bobali Corporation, against defendant, Tamapa Company. Costs to follow the judgment.

yet easily distinguishable situation. See Texaco, Inc. v. Reichert, 91 Dauph. 391 (1969), relating to a gasoline station lease and holding in effect that the right of first refusal provision in that lease should be construed as merely a supplement to the fixed price option. We see no reason in the instant case to hold that one provision had more significance than the other nor to read into the option agreement of sale a meaning and intention that is not clearly expressed therein.