Commonwealth ex rel. Smith *v.* Smith, Appellant.

Argued March 18, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

2

*Charles F. Mayer,* for appellant.

*Anna Iwachiw Vadino,* Assistant District Attorney, with her *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., June 11, 1970:

On February 21, 1969, Charles Smith was ordered to pay $40.00 per week for the support of his wife and one child Claudine, $15.00 for his wife and $25.00 for his daughter. In addition he was ordered to pay any necessary medical expenses of his daughter and the mortgage on the jointly owned home in which his wife and daughter resided. The mortgage payment was then $59.00 monthly, and his salary was then $116.72 a week. His wife was at that time earning $35.00 per week.

On August 8, 1969, the husband petitioned the court to vacate the order as to the daughter since she had graduated from high school. On September 17, 1969, the wife petitioned for an increase in the order of support. At this time, the husband's salary was $127.32 per week and the mortgage payments had increased to $65.00 monthly. The wife's earnings had increased to $48.00 weekly, and the daughter was attending Delaware State College, in Dover, Delaware. After a hearing in the matter on October 10, 1969, the court below refused to vacate the order as to the daughter and increased the

order for the wife by $2.50, thus ordering the husband to pay a total of $42.50 per week, $17.50 for his wife and $25.00 for his daughter.

The husband has appealed to this court contending: (1) that he made no agreement to send his daughter to college; (2) that in the absence of such agreement his financial condition does not warrant an order for the payment of such college education; and (3) that it was an abuse of discretion for the court to increase the order of support in favor of his wife.

Appellant's own testimony, as it appears on record in the transcript of the proceedings, reveals that he did in fact promise to send his children to college; that he had sent another daughter to college and was sending his son to business school but his wife had him transferred to a southern college not of appellant's liking. The record reveals that he did want his daughter to attend college and that his objection was not that he could not afford a college education but that he did not choose the college she was attending. Appellant testified: "A. I don't object to her going to college. I had her on her way to college, and she* has messed up two children going to college. Q. How would she mess up two children going to college? A. I had a boy, who I had in business school in Philadelphia. She took him out and sent him to Shaw in North Carolina. Today I don't know where he is. And, I was paying for him, and he would have gotten a degree. Today he is in a third rate college, and I don't think he will ever graduate from it. Q. Did you go to college? A. No, sir. My parents didn't have enough money to send me to college, *but I promised them all I would send them to college.* Q. What is wrong with the school where your—A. Because she was supposed to go to Temple University. That's right. I had been working on a

---

* Having reference to his wife.

scholarship. She was to go to Temple, and that is why she switched her. She switched her at Christmas. Q. If your daughter were transferred to Temple University, would you object to that? A. No, sir. Q. You would not? A. No, sir." MR. SMITH: "Do I have any right to say where this child goes to school? I don't need no Court to tell me about sending my child to school. I want them to have an education. I was the one who sent the girl through college. I sent her. She was supposed to go to Temple. She started at Temple for one year, and then she switched her to Penn State for three years. I was the one who paid it. I started the boy in college in Philadelphia."

It is our opinion that the above statements of the appellant go far beyond a "mere expression of desire" which we stated in *Commonwealth ex rel. Rice v. Rice,* 206 Pa. Superior Ct. 393 (1965), is not an agreement. The appellant's testimony in this case clearly reveals that he did in fact promise and did in fact take steps to secure his daughter's admission into a college of his own choosing. His testimony nowhere indicates that he would find it a hardship to contribute $25.00 weekly toward his daughter's tuition and board of $1500.00. It is evident his only objection was that he did not have a voice in the choice of the college to which objection the lower court was most sympathetic and helpful: MR. SMITH: "I think the boy is lost now because she sent him South. THE COURT: I have a great deal of sympathy with your position. You get a place for her where she will be accepted for next year, and you come back here, and something will be done. But, you just can't sit back and object to something that is done and not have an alternative. Do you understand?" THE COURT: "All right, I said to him for him to come up with a plan. This man impresses me because he has said every time, even with the income that he has, I want my children to go to college. Now, isn't that com-

mendable? We are not going to decry the man for that. You come up with a good plan and the Court will listen to you. I guarantee you that."

We believe that the record clearly and substantially supports a finding that the father did promise his daughter a college education and that he in fact does want her to continue with the college education but only in a school he has had a voice in choosing. No claim of undue hardship was made by him. Nor do the facts reveal such hardship. The appellant is earning $127.32 weekly or $6,620.64 annually; he now pays $780 annually on the mortgage of the jointly owned property, one-half of which, being $390.00, accrues to his benefit. The order of support entered against him in the amount of $42.50 weekly totals $2210 annually. Adding to that $2210 one-half of the mortgage payments or $390.00, the order leaves defendant $4,000.00 for his benefit and use. As was stated in *Com. ex rel. Ulmer v. Sommerville*, 200 Pa. Superior Ct. 640 (1963), in the absence of an express agreement, a father may not be required to endure "undue hardship" to send a child through college, but this does not mean that his liability for such college education is dependent on his being able to afford it without making any personal sacrifices. Appellant's income as reduced by the lower court's order of support may require some personal sacrifice but there is nothing in the record to indicate that it would cause undue hardship for him to contribute $25.00 weekly to his daughter's education which costs $1500 for tuition and board alone. His wife and daughter (by part-time employment) make up the difference for all the other expenses of clothing, books, transportation, etc.

We find no reason, therefore, to disturb the action of the court below in ordering this contribution, for it is sustained by the record either because appellant had agreed to educate his daughter or because in the absence

of such agreement, her education in college does not impose undue hardship though it may require some personal sacrifice on his part.

Nor do we find error in the $2.50 weekly increase of the order of support in favor of the wife. Appellant's weekly salary had increased by $10.55. It is true that his wife's salary in the meantime had also increased $13.00 weekly, but her costs of living had also increased. In addition to the regular personal and household expenses and house repairs and maintenance, she had expenses regarding her daughter's tuition, clothing, books, etc. These expenses incurred in behalf of the daughter cannot be disregarded in calculating the wife's needs, for, as already shown, under the circumstances of this case it cannot be said to be unreasonable that such an education be provided.

The order of the court below is therefore affirmed.

---

CONCURRING AND DISSENTING OPINION BY MONTGOMERY, J.:

I concur with the action of the majority in affirming the award to the mother in this case. However, I dissent from the affirmance of the award to the daughter for her college education.

It is my opinion that the testimony of the father on the subject of his promises to send his daughter to college can be interpreted only as a general desire or his personal resolution to do so. It is apparent from the record that the father does not have sufficient estate, earning capacity or income to enable him to send this child to college without undue hardship. Therefore, in absence of an agreement, we should not require him to do so. *Commonwealth ex rel. Yannacone v. Yannacone,* 214 Pa. Superior Ct. 244, 251 A. 2d 694 (1969). I believe that the term agreement, which was used by this Court in the latter and other like cases, means a binding contract, oral or written, which must be sup-

ported by consideration like other contracts to be legally enforceable. See *Commonwealth v. Martin,* 196 Pa. Superior Ct. 355, 175 A. 2d 138 (1961). Having found no such agreement in this record, I respectfully dissent from expansion of the law of support to include the enforcement of orders of support against parents who express their strong desires or promises to send their children to college.