## Schantz v. Schantz

*Richard F. Stevens* and *Theodore J. Zeller, Jr.* of *Butz, Hudders & Tallman,* for plaintiff.

*John P. Thomas* of *Walker, Thomas & Karess,* for defendant.

DAVISON, J., May 30, 1972.—In this action in equity, plaintiff seeks to specifically enforce against her former husband the following provision of a marital property settlement agreement: "Husband agrees to provide a college or other type of higher education as well as any type of Graduate School education for his sons and daughters." Four children were born of the marriage of plaintiff and defendant. Sometime after the execution of the property agreement of August 29, 1969, the parties were divorced and defendant has since remarried.

Plaintiff's position is that the language of the marital agreement quoted in the first paragraph of this opinion requires defendant to pay for his sons' and daughters' room, board, tuition, spending money, books,

as well as any and all other fees associated with being at college. In support of her position, plaintiff relies upon the wording of the agreement, which to the extent an ambiguity exists, she asks be resolved against defendant for the reason that it was prepared by his counsel; that at the time the agreement was executed, it was contemplated that plaintiff's interpretation was, in fact, what was to occur, because at that time defendant was paying the subject costs and expenses for the college education of his son, Edward; and, that during the freshman year of his son, Brent, at Syracuse University, while he was engaged in the ROTC program, which paid for his tuition at that time, defendant paid room, board and other expenses and costs relative to his college education.

Defendant, in this thoroughly contested case, argues that the language of the agreement was that of plaintiff's attorney; hence, any ambiguity therein should be strictly construed against her; that since defendant has not been consulted with respect to the choice of college or for that matter anything else, he should not be required to pay anything; that since Brent after first accepting an ROTC scholarship at Syracuse subsequently cancelled it contrary to his father's wishes, defendant should be exonerated from all financial obligations to educate him; and, finally, that due to the father's allegedly changed financial circumstances, he should be permitted to, in effect, nullify or in some way modify the contractual obligations.

With respect to the contentions by each side that the other was responsible for the selection of the language to be used in paragraph 11 of the subject agreement, we find, after a careful review of the exhibits and the testimony that the language for the clause originated in a letter from defendant's counsel to plaintiff's counsel and was then inserted by defen-

dant's counsel in the agreement he prepared and submitted to plaintiff's counsel. This is borne out by Richard F. Stevens, Esq., a respected member of the bar and a partner in the same firm of attorneys continuing to represent plaintiff, who, in uncontradicted testimony during the hearing, stated that while his office did retype the agreement, that critical part of the clause in question was that of defendant's counsel and retyping was done only to reflect changes made elsewhere in the agreement.

In Pennsylvania, a father may be required to pay for the college education of his children where he has voluntarily agreed to provide therefor: Wiegand v. Wiegand, 349 Pa. 517, 37 A.2d 492 (1944) and Commonwealth ex rel. Smith v. Smith, 217 Pa. Superior Ct. 1, 268 A.2d 161. Such clauses are drawn for the benefit of the minor children of the parties to the contract and the interpretation should be adopted which, under all the circumstances of the case, produces the most reasonable and probable result.

The applicable principles are set forth in Wiegand as follows:

"We should adopt that interpretation which, under all the circumstances of the case, ascribes the most reasonable, probable, and natural conduct to the parties: 12 Am. Jurisprudence p. 754, §231. Where doubt exists as to the interpretation of the contract, it being prepared by one party thereto, upon the faith of which the other has incurred an obligation, we shall adopt that interpretation which shall be favorable to the latter. It must be construed with some degree of strictness against the party preparing it; Heffner v. First National Bank of Huntingdon, 311 Pa. 29, 33, 166 A. 370, [87 A.L.R. 610]; in other words, a contract is to be taken most strongly against the party on whom the obligation rests: R.C.L. p. 854; Pennsylvania

Railroad Co. v. Pennsylvania-Ohio Electric Co., 296 Pa. 40, 48, 145 A. 686. Every agreement is to be interpreted and construed with reference to the circumstances under which the parties contract: Coulter, J., in Callen v. Hilty, 14 Pa. 286, 288. The words of a grant are to receive a reasonable construction, and one that will accord with the intention of the parties; and, in order to ascertain their intention, the court must look at the circumstances under which the grant was made: Connery v. Brooke, 73 Pa. 80, 83. A contract should be construed in the light of the surrounding circumstances and the objects manifestly to be accomplished: Richardson v. Clements, 89 Pa. 503, 505 [33 Am. Rep. 784]; McKeesport Machine Co. v. [Ben Franklin] Insurance Co., 173 Pa. 53, 57' [34 A. 16]: McMillin v. Titus, 222 Pa. 500, 503, 72 A. 240 [241]."

Defendant laments because of his alleged change in financial circumstances and because he has not been given an opportunity to participate in the decision making process of where his son, Brent, matriculates. While the advantages of hindsight are obvious, we perceive no reason, nor has anyone pointed any out to us why, if the parties had so intended when they executed the agreement, the clause in question could not have conditioned the father's responsibility to educate his children upon his ability to pay therefor; and, also have provided for his participation or, indeed, veto power over the choice of college. We note with sadness that it is, indeed, unfortunate that communication among this family as a unit, inter se, has so degenerated that it has, in effect, ceased.

While we are not without sympathy for a father who has suffered financial reverses of such a nature as to preclude his educating his children, and did, over plaintiff's objection, permit such testimony here, we conclude that based upon the entire record such a

defense is not available on the facts presented. The rule is different where a father has not agreed to pay for the education of his children. Thus, absent a specific undertaking by a father to educate his children, his present financial conditions would be relevant for the court to consider, although even that rule seems in jeopardy in view of recent appellate decisions. See Commonwealth ex rel. Smith v. Smith, supra; Commonwealth ex rel. Grossman v. Grossman, 188 Pa. Superior Ct. 236, 146 A.2d 315 (1958); and Commonwealth ex rel. Stomel v. Stomel, 180 Pa. Superior Ct. 573, 119 A.2d 597 (1956).

Even if the agreement had provided for payment by defendant commensurate with his ability to pay, which is not the situation here, the Supreme Court in the recent case of Emrick v. Emrick, 218 Pa. Superior Ct. 178, 284 A.2d 682 (1971), indicated that the court will not readily accede to the reduction of such commitments.

Thus, we conclude that plaintiff is entitled to specific performance; that defendant shall pay the items hereinafter specified; that while as a socially desirable matter of harmony and fairness, family consultation should take place with respect to choice of college, no such accord is a prerequisite to payment absent a specific provision to do so; and, that despite any change in defendant's financial circumstances and we add that we find no substantive change in that regard, assuming such to be the case, that, in itself, would not constitute a defense to the performance of defendant's contractual obligations.

## ORDER

And now, May 30, 1972, it is ordered and decreed that defendant is directed to provide for the college education of his children in accordance with the

provisions of the agreement dated August 29, 1969; including, but not necessarily by way of limitation, paying for the room, board, tuition, books and registration and other similar fees required by the college as a condition to attendance thereat.